Opinion issued July 21, 2005.










In The
Court of Appeals
For The
First District of Texas




NOS. 01-04-00184-CR
          01-04-00191-CR




JAMES STEPHEN JONES, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 21st District Court
Washington County, Texas
Trial Court Cause No. 13,962 (Counts 1 and 2)




MEMORANDUM OPINION

          A jury found appellant, James Stephen Jones, guilty of robbery, and the trial
court sentenced him to 10 years’ confinement. Appellant also pled guilty to evading
arrest with a vehicle, and the trial court sentenced him to two years’ confinement. In
two issues, appellant asserts that the trial court erred in denying (1) his motion for
mistrial based on jury taint and (2) his motion for directed verdict. We affirm the
judgment of the trial court.
Background 
          Complainant, Emily Kopycinski, lives in Chappell Hill, Texas, which is located
in Washington County. One day, Kopycinski was traveling home from her meat
market, located near the intersection of Highways 1155 and 290 in Washington
County, when she noticed appellant and Terell Tolbert standing next to a gray car
with the car’s hood raised. Kopycinski testified that the men “appeared to be in
distress” and beckoned her to stop. Kopycinski pulled over, stopped in front of the
men, walked to the back of her car, and asked the men whether they needed help. The
men responded that they needed jumper cables. Kopycinski called her husband from
her mobile phone and asked him to come and assist the two men. After calling her
husband, Kopycinski returned to her car to wait for her husband.
          Tolbert approached her, pulled her out of her car, and pushed her onto the
ground. Tolbert got in Kopycinski’s car and sped away. Appellant closed the hood
of the gray car and followed behind Tolbert at a high rate of speed. While she was
stranded on the side of the road, Kopycinski flagged down a car driven by Paul
Derkowski.


 Derkowski followed the gray car until a Washington County sheriff’s
deputy was located. After receiving a dispatch call, Deputy Eddie Ocanas began to
pursue the gray car and eventually arrested appellant.
          At trial, the venire panel was questioned about the robbery and evading arrest
offenses. Following voir dire, during a recess, a potential juror, Mary P. Thompson,
embraced Kopycinski as she stepped off the elevator. This encounter was witnessed
by several other potential jurors. Outside the presence of the other venire members,
the trial court questioned Thompson about the encounter. Thompson advised the trial
court that her relationship with Kopycinski would not affect any decision she might
make in the case. At the request of appellant’s trial counsel, the trial court, in open
court, also questioned the entire venire panel about the encounter. The venire
members advised the trial court that this encounter would not affect their ability to be
impartial jurors and make a decision based on the evidence presented at trial. 
Following these questions, appellant moved for a mistrial. The trial court denied his
request.
Mistrial 
          In his first point of error, appellant argues that the trial court erred in denying
his motion for mistrial based on jury taint. In support of his motion for mistrial,
appellant’s trial counsel argued that “the curative measures that the Court used [were]
not enough to remove the taint and prejudice that [had] been established with the
jury.”
          The standard of review for a trial court’s denial of a motion for mistrial is abuse
of discretion. Ladd v. State, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). A mistrial
is a device used to halt trial proceedings when error is so prejudicial that expenditure
of further time and expense would be wasteful and futile. Id. The determination of
whether a given error necessitates a mistrial must be made by examining the
particular facts of a case. Hernandez v. State, 805 S.W.2d 409, 414 (Tex. Crim. App.
1990). The asking of an improper question will seldom call for a mistrial, because,
in most cases, any harm can be cured by an instruction to disregard. Id. at 413. A
trial judge’s discretion to declare a mistrial based on manifest necessity is limited to
“very extraordinary and striking circumstances.” Brown v. State, 907 S.W.2d 835,
839 (Tex. Crim. App. 1995). As a general rule, manifest necessity exists where the
circumstances render it impossible to reach a fair verdict, where it is impossible to
proceed with trial, or where the verdict would be automatically reversed on appeal
because of trial error. Id. 
          In all criminal prosecutions, a defendant has the right to a fair and impartial
jury. U.S. Const. amend. VI; Tex. Const. art . I § 10. Bias exists as a matter of law
when a prospective juror admits he is biased for or against a defendant. Anderson v.
State, 633 S.W.2d 851, 854 (Tex. Crim. App. 1982). When bias is not established as
a matter of law, the trial court has discretion to determine whether bias actually exists
to a degree that the juror is disqualified and should be excused from jury service. Id.
at 853-54. The mere fact that a juror knows, has an intimate or causal acquaintance
with, or has friendly relations with the defendant, or, as here, the complainant, is not
a sufficient basis for disqualification of a juror. See id. at 853.
          Furthermore, with respect to oral questions asked during voir dire, error occurs
where “a prejudiced or biased juror is selected without fault or lack of diligence on
the part of defense counsel, such counsel acting in good faith on the juror’s responses
and having no knowledge of their inaccuracy.” Gonzales v. State, 3 S.W.3d 915, 916-17 (Tex. 1999). Defense counsel must be diligent in eliciting pertinent information
from prospective jurors during voir dire to uncover potential prejudice or bias. Id. at
917. Defense counsel has an obligation to ask specific questions as well as follow-up
questions to bring out information, which might be said to indicate a juror’s inability
to be impartial, truthful, and the like. See, e.g., Brandon v. State, 599 S.W.2d 567,
578 (Tex. Crim. App. 1979) (holding no error where counsel failed to ask follow-up
questions after potential juror stated that he was acquainted with the complainant). 
Unless defense counsel asks such questions, we must hold that, “the purportedly
material information which a juror fails to disclose is not really ‘withheld’ so as to
constitute misconduct which would warrant a reversal.” Gonzalez, 3 S.W.3d at 917
(citing Sneed v. State, 670 S.W.2d 262, 266 (Tex. Crim. App. 1984)). 
          Here, outside the presence of the other venire members, the trial court
questioned Thompson about the encounter. Thompson stated that she did not realize
Kopycinski was the complainant in the case because she only knew Kopycinski as
“Sissy Thompson.”


 Thompson further explained that, when she saw Kopycinski get
off of the elevator, she recognized her because Thompson’s daughter and
Kopycinski’s son had previously dated. Finally, Thompson advised the trial court
that her relationship with Kopycinski would not affect any decision she might make
in the case. Appellant’s trial counsel did not ask any questions. 
          Appellant’s trial counsel requested that the trial court question the venire panel
to determine “all who saw” Thompson embrace Kopycinski. The trial court then
conducted the following exchange with the venire panel:
Trial court:            The question that I have of you, is there anyone who
witnessed any exchange between Ms. Emily
Kopycinski and any prospective juror on this jury
panel? Did anyone witness any exchange between
those two people, either speaking to each other–yes,
ma’am. Please stand and if you don’t mind, please
identify yourself by your name.
 
Beckworth:            My name is Cynthia Beckworth and I saw them
embrace and speak to one another.
 
Trial court:            Is there anyone other than Ms. Beckworth that
witnessed this exchange? Yes, sir. Please stand and
state your name.
 
Latimer:                 My name is Dudley Latimer. I saw the same thing.
 
Trial court:            All right.
 
Latimer:                 Saw them embrace --
 
Trial court:            Thank you.
 
Latimer:                 – and speak to one another.
 
Trial court:            Is there anyone other than Ms. Beckworth and Mr.
Latimer who witnessed this exchange? Yes, ma’am. 
Please stand and state your name. 
 
Perez:                    I’m Monica Perez and I witnessed the same
encounter.
 
Trial court:            All right. Thank you, Ms. Perez. Is there anyone
else? All right. My question to you, Ms. Beckworth,
Mr. Latimer, and Ms. Perez, is there anything about
that would in any way affect your ability to sit on
this jury and make a decision based only on the
evidence that you hear in this courtroom and the law
that is given to you by the Court? 
 
Beckworth, Latimer 
and Perez:              No.
 
Trial court:            Would any of the three of you be influenced by what
you saw, the exchange between these two
individuals? Is there– each of you, let the record
reflect, have indicated by shaking your head no. Is
that your answer to that last question?
 
Beckworth, Latimer 
and Perez:              Yes.
 
Trial court:            As to the remainder of you, having heard these
questions asked by the Court of these three
individuals, is there anyone on the jury panel that
would be influenced by having heard these questions
being propounded to these three individuals? Is
there anyone that would be influenced in rendering
a verdict, having heard these questions asked?
Can all of you make a decision based only on the
evidence that you hear in this courtroom and the law
that is given to you by the Court and not be
influenced by any of these matters that have just
been related to you? Can you do that? Is there anyone who cannot do that?
All right. Thank you. I’m going to ask the lawyers
to retire to strike their lists.
 
          Although Beckworth, Latimer, and Perez witnessed Thompson embrace
Kopycinski, they advised the trial court that this encounter would not affect their
ability to be impartial jurors and make a decision based on the evidence presented at
trial. Following this exchange, appellant’s counsel did not question any of these three
jurors, the remaining venire members, or Thompson to verify whether they would be
able to be fair and impartial jurors. Accordingly, because appellant’s counsel did not
follow-up with specific questions to uncover any potential bias or prejudice with
regard to the venire members, we hold that the trial court did not abuse its discretion
in denying appellant’s motion for mistrial. See Brandon, 599 S.W.2d at 578. The
mere fact that Thompson was acquainted with Kopycinsk is not a sufficient basis for
disqualification. See Anderson, 633 S.W.2d at 853. 
          We overrule appellant’s first point of error.
 
Motion for Directed Verdict
          In his second point of error, appellant contends that the trial court erred in
denying his motion for directed verdict. Appellant’s motion for directed verdict was
based on three grounds — (1) venue, (2) lack of bodily injury, and (3) the law of
parties.
          A motion for directed verdict is an attack on the legal sufficiency of the
evidence. Madden v. State, 799 S.W.2d 683, 686 (Tex. Crim. App. 1990); 
Rohrscheib v. State, 934 S.W.2d 909, 910 (Tex. App.—Houston [1st Dist.] 1996, no
pet.). When conducting a legal-sufficiency review, we view the evidence in the light
most favorable to the verdict to determine whether any rational fact finder could have
found the essential elements of the offense beyond a reasonable doubt. King v. State,
29 S.W.3d 556, 562 (Tex. Crim. App. 2000); Rohrscheib, 934 S.W.2d at 910. 
Although a legal-sufficiency analysis entails a consideration of all evidence presented
at trial, we may neither re-weigh the evidence nor substitute our judgment for the
jury’s. King, 29 S.W.3d at 562. The jury, as trier of fact, is the sole judge of the
credibility of witnesses and may believe or disbelieve all or any part of a witness’s
testimony. Reece v. State, 878 S.W.2d 320, 325 (Tex. App.—Houston [1st Dist.]
1994, no pet.).
Venue
          Appellant moved for a directed verdict because the State failed to prove that
the alleged robbery occurred in Washington County.
          We presume that venue was proved at trial unless it was disputed in the trial
court or the record affirmatively shows otherwise. Tex. R. App. P. 44.2(c)(1); see
also Clark v. State, 558 S.W.2d 887, 891 (Tex. Crim. App. 1977). Here, appellant
moved for a directed verdict because the State did not present any “direct evidence”
that the alleged robbery occurred in Washington County. Appellant, however, did not
present any contradictory evidence regarding venue; and venue was not an issue that
was disputed in the trial court. In criminal cases, venue need only be proven by a
preponderance of the evidence. See Black v. State, 645 S.W.2d 789, 790 (Tex. Crim.
App. 1983). Venue can be established by either direct or circumstantial evidence. 
Id. If venue is not specifically stated, the proper county for the prosecution of
offenses is that in which the offense was committed. Tex. Code Crim. Proc. Ann.
art. 13.18 (Vernon 2005).
          In this case, the indictment alleged that the offense occurred in Washington
County. Moreover, Kopycinski testified that she was traveling from her meat market
in Washington County to her home in Washington County when she saw appellant
and Terell Tolbert standing on the side of the road. Specifically, Kopycinski
explained that she saw the two men approximately “a half mile, [or] quarter mile”
from downtown Chappell Hill. Furthermore, Derkowski testified that he was
traveling southbound on Highway 1155, when he noticed Kopycinski stranded on the
side of the road, approximately “a quarter of half mile” away from his home, which
is also located in Chappell Hill in Washington County.
          We hold that a rational fact finder could have found that this evidence was
sufficient to prove that Washington County is the proper county of venue and that the
trial court did not err in denying appellant’s motion for directed verdict on the venue
challenge. See Black, 645 S.W.2d at 790.
Bodily Injury
          Next, appellant argues that a directed verdict was proper because the State
failed to prove that Kopycinski suffered bodily injury. Specifically, appellant argues
that, because Kopycinski did not testify that she felt “pain” as a result of the injuries
she sustained when Tolbert pushed her to the ground, the State has not satisfied the
bodily injury requirement for robbery.
          A robbery conviction requires that the State prove that appellant, in the course
of committing theft and with intent to obtain or maintain control of the property, (1)
intentionally, knowingly, or recklessly caused bodily injury to another or (2)
intentionally or knowingly threatened or placed another in fear of imminent bodily
injury or death. See Tex. Pen. Code Ann. § 29.02(a)(1)-(2) (Vernon 2003). The
term “bodily injury” is defined as, “physical pain, illness, or any impairment of
physical condition.” Tex. Pen. Code. Ann. § 1.07(8) (Vernon 2003 & Supp. 2004-2005). The Court of Criminal Appeals has held that the definition of bodily injury
included in the robbery statute, “appears to be purposefully broad and seems to
encompass even relatively minor physical contacts, so long as they constitute more
than mere offensive touching.” Lane v. State, 763 S.W.2d 785, 786 (Tex. Crim. App.
1989). Accordingly, “so long as violence is clearly perpetrated against another for
the purpose of . . . preventing or overcoming resistance to theft,” the bodily injury
requirement is satisfied. Id. at 787.
          Here, Kopycinski testified that Tolbert pulled her out of her car and pushed her
to the ground. She also testified that, as a result of Tolbert’s pushing her to the
ground, her “knees were bruised, her elbow and ankle were cut, and [she] was sore
all over.” Accordingly, we hold that a rational fact finder could have found the
evidence sufficient to establish the element of bodily injury, and we hold that the trial
court did not err in denying appellant’s motion for directed verdict on the bodily
injury challenge. See id.
Law of Parties
          Finally, appellant argues that a directed verdict was proper because the State
did not prove that he was criminally responsible for robbery under the law of parties.           The law of parties provides that a person is criminally responsible for an
offense committed by the conduct of another if, acting with the intent to promote or
assist the commission of the offense, he solicits, encourages, directs, aids, or attempts
to aid the other person to commit the offense. Tex. Pen. Code Ann. § 7.02(a)(2)
(Vernon 2003).
          In this case, the jury charge authorized the jury to convict appellant of robbery
if it found beyond a reasonable doubt that either (1) appellant, acting alone, while in
the course of committing theft, did intentionally, knowingly or recklessly cause
bodily injury to Kopycinski or (2) appellant, acting with intent to promote or assist
the commission of the offense, aided or attempted to aid Tolbert to commit the
offense.
          At trial, Kopycinski testified that appellant was present when Tolbert pulled
her out of her car, pushed her to the ground, and stole her car. She testified that, after
Tolbert stole her car, appellant followed Tolbert in the stalled car. Additionally,
Deputy Ocanas testified that, after he arrested appellant, Kopycinski positively
identified him as one of the men who had taken her car minutes earlier. 
          Viewing the evidence in the light most favorable to the jury’s verdict, a rational
trier of fact could have found beyond a reasonable doubt that appellant assisted,
solicited, encouraged, directed, aided, or attempted to aid Tolbert in stealing
Kopycinski’s car. See, e.g., Johnson v. State, 6 S.W.3d 709, 711 (Tex. App.—
Houston [1st Dist.] 1999, pet. ref’d) (finding sufficient evidence of intent to assist
aggravated robbery when Johnson, who did not enter store, drove car seen leaving
store after robbery, attempted to outrun police, and was later apprehended with the
two men identified as robbers). Accordingly, we hold that any rational trier of fact
could have found beyond a reasonable doubt that appellant was guilty of robbery and
that the trial court did not abuse its discretion in denying appellant’s motion for a
directed verdict.
          We overrule appellant’s second point of error.
Conclusion
          We affirm the judgment of the trial court.
                                                                                                                 
                                                             George C. Hanks, Jr.
                                                             Justice
 
Panel consists of Chief Justice Radack and Justices Jennings and Hanks.

Do not publish. Tex. R. App. P. 47.4.